### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LB Pharma Services, LLC, <br><br>                  Plaintiff, <br><br>    v. <br><br><br> KrunchCash, LLC and Jeffrey Hackman, <br><br>                  Defendants. | Civil Action No. 9:20-cv-80141-DMM <br><br> Hon. Donald M. Middlebrooks <br><br> **FIRST AMENDED COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiff, LB Pharma Services, LLC complaining of Defendants, by and through the attorneys of record, Frier & Levitt, LLC, and hereby alleges causes of action against Defendants, and each of them, as follows:

### JURISDICTION AND VENUE

1.      Plaintiff is a Delaware company, with its principal place of business located in Houston, Texas, with a registered office in the State of Delaware at 8 The Green, Suite A, Dover, Delaware, 19901.

2.      At all times relevant to this complaint, Defendant KrunchCash, LLC is a Florida limited liability company, with its principal place of business located at 200 East Palmetto Park Road #700, Boca Raton, FL 33432.

3.      Defendant Jeffrey Hackman, the owner and Chief Operating Officer of KrunhCash, LLC is an individual residing in Boca Raton, Florida.

4.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs and Plaintiff and Defendants are citizens of different states.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c) because a substantial part of the events giving rise to Plaintiff's claims occurred, in part, in this District, and because Defendants conduct substantial business in this District.

6.      Venue properly lies in this judicial district under 28 U.S.C. § 1391(b)(1) because all Defendants are Florida residents.

7.      This Court has personal jurisdiction over Defendants because Defendants marketed, offered, made, serviced and/or collected on loans in Florida.

## THE PARTIES

8.      Plaintiff, LB Pharma Services, LLC ("LB Pharma" or "Plaintiff"), is a Delaware corporation with a principal place of business at PO Box 56192 Houston, Texas 77256.

9.      Plaintiff, LB Pharma, operates retail pharmacies ("Plaintiff Pharmacies").[1] Plaintiff Pharmacies service patients by dispensing medications and pharmaceutical products upon receipt of facially valid prescriptions written or authorized by healthcare providers. Upon dispensing such medications, Plaintiff submits claims for reimbursement to the patients' Health Plans that provide pharmacy benefits.

10.      Defendant, KrunchCash, LLC ("KrunchCash"), is a Florida limited liability company with a principal pace of business at 200 East Palmetto Park Road, Boca Raton, Florida and KrunchCash was the real and *de facto* lender of the loans made to LB Pharma.

11.      KrunchCash purports to be a third-party financier that provides cash advances to professionals such as law firms and pharmacies.[2]

---

[1] Plaintiff Pharmacies include the following: 1) JSW Prosperity, LLC d/b/a 1 Stop Pharmacy; 2) Care Pharma LLC d/b/a Wilson County Pharmacy; 3) Omega Care Pharmacy, Inc.; 4) Eagle Lake Pharmacy, Inc. d/b/a Eagle Lake Pharmacy; 5) Sam's Pharmacy, Inc. d/b/a Sam's Pharmacy; 6) Lake Side Pharmacy; 7) Our Pharmacy, LLC d/b/a Serve and Save Pharmacy; 8) BN Specialty, LLC; 9) Price Choice Pharmacy #3 LLC; and, 10) SHB RX LLC d/b/a Gunter Pharmacy..
[2] There is a lawsuit commenced against the same Defendants in this Court. *See Jonathan S. Resnick, et al. v. KrunchCash, LLC, et al.*, Case No. 9:20-cv-80163-WPD. The *Resnick* case also involves usurious loans structured and made by Defendants.

12.    Defendant, Jeffrey Hackman ("Hackman"), the owner and Chief Operating Officer of KrunhCash, is an individual residing in the State of Florida. Defendant Hackman controls and operates KrunchCash. Defendant Hackman is moving force behind Defendant KrunchCash. Defendant Hackman is personally liable for having intentionally used KrunchCash to impose usurious loans upon Plaintiff.

## FACTUAL ALLEGATIONS

**A.  Defendants Made Numerous Usurious Loans to Plaintiff in Violation of Florida Law, By Way of a Usurious Master Purchase Agreement ("MPA")**

13.    Defendant Hackman represented himself as a financial expert that could assist Plaintiff in securing loans on favorable terms.

14.    With his alleged superior knowledge of financial matters, Defendant Hackman assumed a position of trust and confidence with Plaintiff in connection with loan financing agreements.

15.    Plaintiff relied on Hackman's advice and counsel and considered Hackman a fiduciary and trusted advisor.

16.    As a result of Defendant Hackman's representations, Plaintiff acquiesced to signing a "Master Purchase Agreement" ("MPA"), which gave the Defendants the opportunity to "purchase," from Plaintiff, Claims Receivables (i.e., reimbursements from Insurance Plans for pharmacy claims submitted by the Plaintiff Pharmacies).

17.    According to the MPA, Defendants would "purchase" the Claims Receivables in tranches, or sets, at a lesser value (i.e., the "Purchase Price" or loan principal) than the reimbursement amount paid by Insurance Plans to Plaintiff Pharmacies ("Total Billed Amount").

18.    Plaintiff is then required, pursuant to the MPA, to "repurchase" each tranche of Claims Receivables from Defendants at a considerably higher rate ("Repurchase Price" or loan principal plus interest).

19.     Defendants calculated the Repurchase Price by adding a Repurchase Premium (i.e., interest) to the Purchase Price.

20.     The period between the "purchase" and "repurchase" of the Claims Receivables is known as the "Repurchase Period."

21.     Before the end of the Repurchase Period, Plaintiff is obligated to pay back the total amount of money it borrowed ("Purchase Price") from Defendants, plus any "Repurchase Premium."

22.     By way of example and not limitation, the initial two tranches of Claims Receivables, coined Wilson AR 0629 and Omega AR 0629, were "purchased" on July 2, 2018,[3] at the Purchase Price of $1,092,170.13 and $296,461.57, respectively.

23.     For Wilson AR 0629 and Omega AR 0629, the "Repurchase Period" was "90 days after the closing date" (i.e., 90 days after the purchase date of July 2, 2018).

24.     The Repurchase Price for Wilson AR 0629 and Omega AR 0629 were $1,187,141.45 and $322,240.84, respectively.

25.     Thus, Plaintiff paid, in interest alone, $94,971.32 (8.69% of Purchase Price) for the Wilson AR 0629 loan and $25,779.27 (8.69% of Purchase Price) for the Omega AR 0629 loan.

26.     For the Wilson AR 0629 loan and the Omega AR 0629 loan, Plaintiff paid interest of 8.69% of the Purchase Price, notwithstanding the fact that Plaintiff, in most instances, made full payments well before the end of the Repurchase Period. This excessive interest rate of 8.69% over a 90-day loan period **amounts to a per annum interest rate of 35.24%**.

27.     Defendants have effectively, under the guise of a "Master Purchase Agreement," set up a predatory lending scheme, whereby Defendants collect an excessive, illegal interest rate on predatory loans.

---

[3] The "purchase" date for each tranche is also referred to as the "Closing Date."

28.     Defendants, in fact, never actually purchased the Claims Receivables, instead Defendants in exchange for the "sale" of Claims Receivables simply loaned Plaintiff a sum of money equaling the total value of the Claims Receivable minus a variable interest rate, an interest rate that always exceeded 25% per annum and, in fact, at times, exceeded 45% per annum on certain loans. Defendants used the term Claims Receivable and the MPA as mechanisms to initiate the loan transaction with the Plaintiff.

29.     The loan period, disguised in the MPA as the "Repurchase Period," was simply the period of time the Plaintiff had to pay back the total value of the loan, plus interest. The loan terms varied and were either 30 days, 45 days, 60 days or 90 days.

30.     Defendants manufactured and made to Plaintiff numerous predatory loans from July 2, 2018 to the present (hereinafter, the "Illegal Loans").

31.     Defendants' predatory lending scheme was so egregious that the interest rates on the Illegal Loans grew significantly over time.

32.     By way of example and not limitation, on July 10, 2018, Defendants made a 60-day loan to Plaintiff in the amount of $372,600.01.

33.     At or before the end of the 60-day loan term, Plaintiff was required to pay back $405,223.89, which meant that Plaintiff was assessed an 8.75% interest rate on a 60-day loan, ***the equivalent of a 53.23% per annum interest rate***.

34.     Defendants skillfully dressed the MPA to make it seem as though it was a valid, legal transaction, even including language in the MPA representing that the Defendants were in good standing under the laws of Florida and that the Claims Receivables were "purchased" at fair market value.

35.     Defendants had zero intention of purchasing Claims Receivables from Plaintiff, instead Defendants acted as predatory lenders, imposing abhorrent, excessive interest rates on loans.

36.     All of the Illegal Loans Defendants made to Plaintiff amount to $39,268,819.56 despite Plaintiff having borrowed $32,497,104.47.

37.     The Illegal Loans are usurious and carry excessive, abhorrent interest rates. All of the Illegal Loans carried a minimum interest rate of 25% while some of the Illegal Loans did in fact carry interest rates exceeding 45%.

38.     Defendants still claim that Plaintiff currently owes $6,760,000.00 in unpaid loans.

39.     Due to Defendants' egregious and willful misconduct and unfair and deceptive business practices, Plaintiff suffered severe financial harm and undue stress.

40.     In light of the foregoing, the MPA should be declared void and Defendants should forfeit all money paid by Plaintiff including, but not limited to, loan principal and interest.

**B. In Retaliation to Plaintiff's Action in the Southern District of Florida, Defendants Filed for And Obtained Confessed Judgment in Maryland State Court and Used Said Judgment to Delay Plaintiff's Request for Waiver of Service and to Intimidate Plaintiff**

41.     Plaintiff filed its Complaint and Jury Demand ("Complaint") in this Court on January 30, 2020, and promptly notified Defendants' counsel Mr. Gabriel Berg ("Mr. Berg") of this filing on January 31, 2020. Plaintiff's counsel Mr. Dae Y. Lee ("Mr. Lee") requested that Mr. Berg acknowledge receipt of the documents and asked whether Mr. Berg had the authority to waive service on behalf of Defendants.

42.     Subsequently, on February 1, 2020, Defendant Hackman sent the following text messages to Plaintiff:

      a.   "I am very disappointed in u – gave u every opportunity to come forward with a workout plan including the week u ask for – though [Ken] & Nikki were better than this! Rather than being honest u choose to start a fight with that pathetic lawsuit from a firm that's out of their league. If u believe paying lawyers will reduce your amount owed, then again u disappoint me for a smart guy! I hope u r not allergic to hornets

because u stuck your hand into the wrong nest. The door is still open to talk but if you choose to hide behind Dea Lee the results will be catastrophic to u, Nikki, and your pharmacy business. Phone is on – your choice!"[4]

b. At 8:06 PM on the same day, Defendant Hackman sent another test message, which reads "Check you [sic] e-mail – judgments were entered today against LB Pharma et al , Nikki and you in the amount of $6,760,000 – it [sic] not to [sic] late to rethink your strategy – let me know."  Immediately thereafter, Hackman sent another text message: "BTW – execution of the judgments will begin tomorrow."

43.     On Tuesday, February 4, 2020, four days after Mr. Lee's request, Mr. Berg, instead of agreeing to waive service, replied with a counteroffer, specifically requesting that Mr. Lee agree to accept service electronically of all papers related to the "KC-LB Pharma et al. dispute" (i.e., Maryland Case).

44.     Notably, Plaintiff, as of February 4, 2020, had not been served with any pleadings related to any such "dispute" and, most notably, had not retained counsel on said "dispute."

45.     Since, Mr. Lee was unable to accept Mr. Berg's counteroffer, Mr. Lee informed Mr. Berg that Plaintiff would retract its waiver of service requests and, instead, serve Defendants by way of personal service.

46.     Nevertheless, on February 7, 2020, Mr. Berg filed the Waivers[5] with this Court.

**C.  In Retaliation to Plaintiff's Action in the Southern District of Florida, Defendants Engaged in Forum Shopping and Obtained a Confessed Judgment in Maryland, Despite Lacking Personal Jurisdiction, the Provisions Set Forth in the MPA and the Present Litigation**

47.     The Plaintiff in this matter is domiciled in the State of Texas.

---

[4] This text message is cited verbatim, inclusive of all spelling, grammar and punctuation errors. For ease of reading, [sic] markers were not added to the text.
[5] The waivers were filed by Adar Yaniv, Esq. who has not entered appearance in this Case.

48.     The Defendants in this matter are residents of the State of Florida.

49.     The MPA requires that "any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity of this Agreement…shall be commenced in Palm Beach County, Florida, which courts shall have exclusive jurisdiction over the adjudication of such matters."

50.     The MPA also states that "[the] Agreement is governed by the laws of the State of Florida, without regard to principles of conflicts of law."

51.     Section 17 of the MPA provides that Defendants "will be entitled to empower any attorney designated by [Defendants], or any clerk of any court of record, to appear for [Plaintiff] in any court of record and confess judgment."

52.     Erroneously taking Section 17 of the MPA to mean that the Defendants can engage in unrestricted forum shopping, Defendant KrunchCash decided to  file a Complaint for Judgment by Confession in the Circuit Court for Baltimore County, Maryland against Plaintiff LB Pharma and the individual Plaintiff Pharmacies – *without notifying Plaintiff LB Pharma or informing this Court and without informing the Maryland Court of the existence of this case pending in this Court.*[6]

53.     Although Maryland courts have long recognized the questionable and archaic application of confessed judgments (*Sager v. Housing Comm'n of Anne Arundel Cnty*, 855 F. Supp. 2d 524, 554 (D. Md. 2012)), once a court determines that a plaintiff has complied with Maryland Rule 2-611(a) and that the pleadings facially demonstrate entitlement to confessed judgment, the "court shall direct the clerk to enter judgment." *See* Maryland Rule 2-611(b).

54.     To obtain a confessed judgment, a plaintiff must merely comply with Maryland Rule 2-611(a), which requires the plaintiff to file a complaint accompanied by (1) a copy of the instrument

---

[6] KrunchCash's case pending in Baltimore County is *KrunchCash, LLC v. LB Pharma Services, LLC, et al.*, Case No. C-03-CV-20-000445.

authorizing the confessed judgment and, (2) an affidavit that specifies the amount due and sates the address of the defendant.

55.     Under Maryland Rule 2-611(c), once the confessed judgment is entered, the clerk shall issue a notice informing the defendant of the entry of judgment. Then, the plaintiff must serve "the notice and copies of the original pleadings" on the defendant in accordance with Maryland Rule 1-121 (or if the defendant's whereabouts cannot be determined, then notice to the defendant must be given in accordance with Rule 2-122).

56.     Ordinarily, after a defendant is properly served with process under Rule 2-611(c), a defendant has thirty-days to file a motion that asks the court to open, modify, or vacate the judgment. *See* Md. Rule 2-611(d) (citing to Md. Rule 2-321).

57.     Defendants' use of Maryland's Confession of Judgement rules is clearly retaliatory and amounts to transparent forum shopping, given that confessed judgments are not permitted under Florida law. *See* § 55.05 Fla. Stat. ("All powers of attorney for confessing or suffering judgment to pass by default or otherwise, and all general releases of error … before such action is brought, shall be absolutely null and void."). Indeed, Defendants only chose to renege on the elected forum of Florida after Plaintiff notified Defendants of the Complaint.

58.     Thus, even though the MPA may contain provisions purporting to permit the entry of a confessed judgment against Plaintiff, such provisions are invalid in Florida and any confessed judgments obtained pursuant to those provisions are "absolutely null and void."

59.     Moreover, Defendants have only provided copies of the original pleadings in the Maryland Action but have failed to provide the court issued notice required by Maryland Rule 2-611(c). Defendants have failed to properly serve Plaintiff and Plaintiff Pharmacies in the Maryland action.

60.     Despite the fact that Plaintiff was not properly served under Rule 2-611(c), Plaintiff filed a Motion to Vacate, or in the Alternative, Open Confessed Judgment in the Maryland Case on February 19, 2020.

61.     Nevertheless, invoking Maryland Rules 2-645 and 2-645.1 Defendants obtained Writs of Garnishment against Plaintiff's financial institutions – all without notice to Plaintiff and without affording Plaintiff an opportunity to contest the entry of the Confessed Judgment in the first instance.[7]

62.     Under Maryland Rule 2-645, a judgment creditor may obtain issuance of a Writ of Garnishment by filing – in the same action where the judgment was entered – a "request" that contains nothing more than "(1) the caption of the action, (2) the amount owed under the judgment, (3) the name and last known address of each judgment debtor with respect to whom a writ is requested, and (4) the name and address of the garnishee."

63.     Upon filing of the "request," "the clerk shall issue a writ of garnishment directed to the garnishee." Md. Rule 2-645(b).

64.     After the writ is issued, it must be served on the garnishee and then "promptly after service upon garnishee," a copy of the writ shall be mailed to the judgment debtor's last known address. Md. Rule 2-645(d).

65.     To date, Plaintiff and Plaintiff Pharmacies (i.e., Defendants in the Maryland Case) have not been served with copies of the Writs of Garnishment.

66.     Putting aside the invalidity of the Confessed Judgment, Defendants' use of Maryland's garnishment procedure as set forth in Maryland Rules 2-645 and 2-645.1 to satisfy judgment obtained by confession under Maryland Rule 2-611 violates the due process clause of the Fourteenth Amendment.

---

[7] Writs of Garnishment have been issued against financial institutions of Defendants in the Maryland Case.

67.     As of the filing of this Amended Complaint, Plaintiff has yet to be heard on Plaintiff's Motion to Vacate the Confessed Judgment and defenses to the Writs of Garnishments.

68.     In light of the unconstitutional deprivation, Defendants should be immediately enjoined from taking any further action to execute and/or satisfy the Confessed Judgment under Maryland Rules 2-645 and 2-645.1 and should be ordered to withdraw the Writs of Garnishment that have been served on Plaintiff's banking institutions.

### COUNT I
### VIOLATION OF FLORIDA USURY STATUTE

69.     Plaintiff incorporates the above-stated allegations by reference as if fully alleged herein.

70.     The MPA and the Illegal Loans violate the Florida usury statute. Under Fl. Stat. § 687.02, the MPA, which functioned as a predatory loan agreement between Defendants and Plaintiff, was a "usurious contract."

71.     Under Fl. Stat. § 687.02, "[a]ll contracts for the payment of interest upon any loan, advance of money, line of credit, or forbearance to enforce the collection of any debt, or upon any obligation whatever, at a higher rate of interest than the equivalent of 18 percent per annum simple interest are hereby declared usurious. However, if such loan, advance of money, line of credit, forbearance to enforce the collection of a debt, or obligation exceeds $500,000 in amount or value, then no contract to pay interest thereon is usurious unless the rate of interest exceeds the rate prescribed in s. 687.071."

72.     In addition, according to Fl. Stat. § 687.03, "it shall be usury and unlawful for any person, or for any agent, officer, or other representative of any person, to reserve, charge, or take for any loan, advance of money, line of credit, forbearance to enforce the collection of any sum of money, or other obligation a rate of interest greater than the equivalent of 18 percent per annum simple interest, either directly or indirectly, by way of commission for advances, discounts, or exchange, or by any contract, contrivance, or device whatever whereby the debtor is required or obligated to pay

a sum of money greater than the actual principal sum received, together with interest at the rate of the equivalent of 18 percent per annum simple interest. However, if any loan, advance of money, line of credit, forbearance to enforce the collection of a debt, or obligation exceeds $500,000 in amount or value, it shall not be usury or unlawful to reserve, charge, or take interest thereon **unless the rate of interest exceeds the rate prescribed in s. 687.071.**"

73.     Pursuant to Fl. Stat. § 687.071(2), "Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take, or receive interest thereon at a rate exceeding 25 percent per annum but not in excess of 45 percent per annum, or the equivalent rate for a longer or shorter period of time, whether directly or indirectly, or conspires so to do, commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083."

74.     According to Fl. Stat. § 687.071(3), "Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take, or receive interest thereon at a rate exceeding 45 percent per annum or the equivalent rate for a longer or shorter period of time, whether directly or indirectly or conspire so to do, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."

75.     According to Fl. Stat. § 687.04, "Any person, or any agent, officer, or other representative of any person, willfully violating the provisions of s. 687.03 shall forfeit the entire interest so charged, or contracted to be charged or reserved, and only the actual principal sum of such usurious contract can be enforced in any court in this state, either at law or in equity; and when said usurious interest is taken or reserved, or has been paid, then and in that event the person who has taken or reserved, or has been paid, either directly or indirectly, such usurious interest **shall forfeit to the party from whom such usurious interest has been reserved, taken, or exacted in any way double the amount of interest so reserved, taken, or exacted.**"

76.    As is evident from Defendants' MPA and the various Illegal Loans, the interest rate Defendants charged was over 25% in every instance, and, in at least one instance, over 45%. This makes the MPA and the Illegal Loans "usurious," according to Fl. Stat. § 687.02.

77.    Furthermore, in addition to civil liability, Defendants also engaged in a criminal act. Plaintiff requests a declaration that the loan is void and unenforceable, as it exceeded even this high 45% amount.

78.    The loan is criminal and void, and Defendants are entitled to nothing. Plaintiff is clearly a victim of usury by Defendants who is required to abide by the usury laws of Florida when conducting business in the state of Florida.

79.    Plaintiff is entitled to the forfeiture of any and all principal and interest actually paid to the Defendants as a result of the Illegal Loans. *See* In re Omni Capital Grp., Ltd., 157 B.R. 712, 717 (Bankr. S.D. Fla. 1993) ("In the case of a loan which rises to the level of criminal usury under Fl. Stat. § 687.071, the entire loan obligation is unenforceable and ***the borrower is entitled to seek forfeiture from the lender of any and all principal and interest actually paid by the borrower*** to the lender under the usurious loan.")

80.    As a direct and proximate result of Defendants' violations of the usury statute, Plaintiff has been injured, and the Plaintiff is entitled to an award of monetary damages and declaratory and injunctive relief.

<u>**COUNT II**</u>
<u>**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**</u>

81.    Plaintiff incorporates the above-stated allegations by reference as if fully alleged herein.

82.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is found at Fl. Stat. § 501.201 to 501.213. The purpose of FDUTPA is stated at Fl. Stat. § 501.202: "To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of

competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce," and "[t]o make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection."

83.     Under the FDUTPA, Fl. Stat. § 501.204(1), "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." In this matter, Defendant engaged in unfair and deceptive trade practices.

84.     The FDUTPA was drafted in broad terms to encompass a wide range of unfair or deceptive practices by individuals and companies. The Florida Supreme Court has defined unfair practices to include conduct that offends public policy and that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. The Court has defined deceptive conduct as representations, omissions, or practices that are likely to mislead the consumer.

85.     Under Fl. Stat. § 501.213, the remedies allowed by FDUTPA are in addition to any other remedies that are available.

86.     Florida case law is replete with examples of businesses that have been held to account for deceptive or unfair trade practices. Here, some of the unfair and deceptive acts of Defendants include:

    a.   Luring Plaintiff into loan transactions under the disguise of a contract, whereby Plaintiff would be obligated to pay back a loan through the "repurchasing" of Claims Receivables at a value exceeding that which the Defendant lent;

    b.   Collecting usurious interest on loans made pursuant to a usurious contract;

    c.   Receiving full interest on a loan, despite Plaintiff's efforts to pay the loan amount prior to the expiration of the loan term; and,

    d.   Using a loan payment to pay Defendants' legal fees.

87.     As a direct and proximate result of Defendants' violation of the FDUTPA statute, Plaintiff has been injured, and is entitled to an award of monetary damages and declaratory and injunctive relief. Under Fl. Stat. § 501.211, Plaintiff is entitled to obtain a declaratory judgment that the unfair and deceptive acts of Defendants violated the FDUTPA.

88.     Further, Plaintiff is entitled to recover damages, attorney's fees and court costs. See Fl. Stat. § 501.2105.

**COUNT III**
**VIOLATION OF FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT**

89.     Plaintiff incorporates the above-stated allegations by reference as if fully alleged herein.

90.     The Florida Civil Remedies for Criminal Practices Act is found at Fl. Stat. § 772.101 to 772.19. Under Fl. Stat. § 772.102(1), the definition of "criminal activity" under the statute includes any crime that is chargeable under other Florida statutes, including "Chapter 687, relating to interest and usurious practices." Here, Defendants violated the Florida laws relating to interest and usurious practices.

91.     Also, "criminal activity" includes violations of "Chapter 817, relating to fraudulent practices, false pretenses [and] fraud generally…." Here, Defendants violated Fl. Stat. § 817.06, via practices involving Illegal Loans.

92.     Defendants violated Fl. Stat. § 817.54, which states that no one can with an intent to defraud, obtain a promissory note evidencing a debt from any person by aid of false representation or pretense.

93.     Under Fl. Stat. § 772.102(2), Defendants are liable for obtaining monies on an "unlawful debt," meaning, any money constituting principal or interest of a debt that is unenforceable in Florida because the debt was incurred in violation of Fl. Stat. § 687.071, relating to criminal usury and loan sharking.

94.     Defendants engaged in an "Enterprise," meaning, an association between their businesses and controlling individuals to engage in the usury loan activities. Defendants engaged in a "pattern of criminal activity" because Defendants engaged in multiple incidents of the criminal activity, specifically by distributing numerous Illegal Loans to Plaintiff.

95.     Under Fl. Stat. § 772.103, Defendants engaged in "prohibited activities," including receiving unlawful monies and proceeds from the Illegal Loans, and investing them back into the unlawful enterprise.

96.     Under Fl. Stat. § 772.18, "[t]he application of one civil remedy under this chapter does not preclude the application of any other remedy, civil or criminal, under this chapter or any other provision of law. Civil remedies under this act are supplemental, and not mutually exclusive."

97.     Under Fl. Stat. § 772.104(1), "[a]ny person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 shall have a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts." Plaintiff is entitled to all of these remedies under the Act.

98.     As a direct and proximate result of Defendants' violation of the Florida Civil Remedies for Criminal Practices Act, Plaintiff has been injured, and the Plaintiff is entitled to an award of monetary damages and declaratory and injunctive relief.

<u>**COUNT IV**</u>
<u>**FRAUD**</u>

99.     Plaintiff incorporates the above-stated allegations by reference as if fully alleged herein.

100.    Defendants are liable for fraud. Defendants had a duty to be truthful and honest in its representations regarding the loans. Defendants fraudulently represented or caused to be represented that these loans were lawful and valid when that was not true.

101.    Plaintiff relied to his detriment on the misrepresentations because if Defendants had truthfully disclosed or caused to be disclosed that the loans were harmful and illegal, the Plaintiff never would have entered the MPA.

102.    As a result of Defendants' fraud, the Plaintiff has been harmed.

103.    As a direct and proximate result of Defendants' fraud, Plaintiff has been injured, and the Plaintiff is entitled to an award of monetary damages and declaratory and injunctive relief.

## COUNT V
## CLAIM UNDER FLORIDA PUNITIVE DAMAGES LAW

104.    Plaintiff incorporates the above-stated allegations by reference as if fully alleged herein.

105.    Plaintiff is entitled to an award of punitive damages against Defendants. The evidence reflects by clear and convincing evidence that Defendants engaged in intentional misconduct including that it knew the subject loan scheme was a scam and was illegal under Florida law, but pursued it anyway. Defendants knowingly participated in the unlawful misconduct. The Plaintiff is entitled to punitive damages.

106.    Plaintiff is further entitled to punitive damages because Defendant fraudulently included numerous false statements within the MPA.

107.    Plaintiff is entitled to an award of punitive damages because Defendants continue to demand that Plaintiff pay abhorrent and illegal interest rates.

## COUNT VI
## DIRECT PERSONAL LIABILITY OF DEFENDANT HACKMAN

108.    Plaintiff incorporates the above-stated allegations by reference as if fully alleged herein.

109.    Upon information and belief, during the pertinent times, Hackman was the founder, sole shareholder, sole director, president, CEO and manager of KrunchCash.

110.    Upon information and belief, Hackman approved the key documents at issue in this matter, including the MPA.

111.     Upon information and belief, Hackman was actively, directly and personally involved in the Defendants' loan enterprise during the pertinent times. He has actively managed the activities of KrunchCash and devised major company policies.

112.     Upon information and belief, Hackman runs the day-to-day operations of KrunchCash which currently originates and services the loans at issue here.

113.     Upon information and belief, all KrunchCash employees report directly to Hackman.

114.     Hackman personally signed the MPA, on behalf of KrunchCash.

115.     Upon information and belief, Hackman played a central role in developing and setting into motion the present scheme.

116.     Upon information and belief, Hackman financed, purchased, serviced, and collected loan monies from Plaintiff.

117.     As a direct and proximate result of Hackman's personal involvement in the tortious and unlawful conduct herein, the Plaintiff has been damaged and is entitled to an award of monetary damages and declaratory and injunctive relief.

## COUNT VII
## ABUSE OF PROCESS

118.     Plaintiff incorporates the above-stated allegations by reference as if fully alleged herein.

119.     Under Florida law, Plaintiff may assert a claim for abuse of process if: (1) defendant "made an illegal, improper, or perverted use of process;" (2) "defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process;" and (3) "as a result of such action on the part of the defendant, the plaintiff suffered damage." *See Plain Bay Sales, LLC v. Gallaher*, No. 9:18-CV-80581, 2020 WL 202960, at *6 (S.D. Fla. Jan. 14, 2020) (citing *S & I Investments v. Payless Flea Mkt., Inc.*, 36 So.3d 909, 917 (Fla. 4th DCA 2010)).

120.     Here, Defendants engaged in clear forum shopping by filing a Complaint for Confessed Judgment in Maryland, a state where neither the Plaintiff nor the Plaintiff Pharmacies reside or hold any interest in real property.

121.     Defendants filed the Complaint for Confessed Judgment for the immediate purpose of intimidating Plaintiff, not in order to collect on the allegedly uncollected debts exceeding $6 million.

122.     If Defendants intended to file the Complaint for Confessed Judgment for the purpose of collecting on the alleged debt, such Complaint would have been filed in the State of Florida.

123.     As noted above, Defendants filed the Complaint for Confessed Judgment in Maryland, because: 1) Maryland allows the filing of Confessed Judgment actions, despite the fact that the Maryland court clearly has no personal jurisdiction over Plaintiff and Plaintiff Pharmacies; and, 2) Defendants sought to intimidate Plaintiff into retracting the instant action pending in this Court.

124.     Text messages sent by Defendant Hackman to Plaintiff on February 1, 2020, make this point clear. They read, in pertinent part:

a.     "I am very disappointed in u – gave u every opportunity to come forward with a workout plan including the week u ask for – though u & Nikki were better than this! Rather than being honest u choose to start a fight with that pathetic lawsuit from a firm that's out of their league. If u believe paying lawyers will reduce your amount owed, then again u disappoint me for a smart guy! I hope u r not allergic to hornets because u stuck your hand into the wrong nest. The door is still open to talk but if you choose to hide behind Dea Lee the results will be catastrophic to u, Nikki, and your pharmacy business. Phone is on – your choice!"[8]

---

[8] This text message is cited verbatim, inclusive of all spelling, grammar and punctuation errors. For ease of reading, [sic] markers were not added to the text.

b.  At 8:06 PM on the same day, Defendant Hackman sent another test message, which reads "Check you [sic] e-mail – judgments were entered today against LB Pharma et al , Nikki and you in the amount of $6,760,000 – it [sic] not to [sic] late to rethink your strategy – let me know."  Immediately thereafter, Hackman sent another text message: "BTW – execution of the judgments will begin tomorrow."

125.   Defendants filed the Complaint for Confessed Judgment by means of improper and perverted use of service solely to threaten, intimidate and scare Plaintiff's into retracting the Complaint.

126.   Defendants' primary intention of filing the Complaint for Confessed Judgment to effectuate collection of the alleged debt, evidenced by the fact that Defendants only filed the Complaint for Confessed Judgment after Plaintiff commenced this instant action.

127.   As a direct and proximate cause of Defendants abuse of process of the Complaint for Confessed Judgment, Plaintiff has been damaged, and continues to be damaged, and is entitled to an award of monetary damages and declaratory and injunctive relief including, without limitation, enjoining Defendants from taking any further action to execute and/or satisfy the confessed judgment under Maryland Rules.

**COUNT VIII**
**VIOLATION OF PROCEDURAL DUE PROCESS**

128.   Plaintiff incorporates the above-stated allegations by reference as if fully alleged herein.

129.   Defendants used Maryland's garnishment procedure, as set forth in Maryland Rule 2-645 and 2-645.1 to satisfy judgments obtained by confession under Maryland Rule 2-611 – without notice or hearing – in violation of the due process clause of the Fourteenth Amendment.

130.   Defendants acted under the "color of state law" by invoking Maryland's garnishment procedure and directing a state official – the Clerk of Court for the Circuit Court for Baltimore County – to issue Writs of Garnishment over Plaintiff's property, which the Clerk of Court did.

131.     Defendants' conduct under the "color of state law" proximately caused Plaintiff to be deprived of clearly established federally protected rights under the Fourteenth Amendment.

132.     Specifically, Plaintiff did not receive notice, a hearing, or any other opportunity to be heard (on any defense, including the validity of any alleged waiver of their right to notice and hearing), either before the confessed judgements were entered or before the issuance of the Writs of Garnishment and the subsequent withholdings of their property.[9]

133.     Plaintiff's deprivation of clearly established federally protected rights was the reasonably foreseeable consequence of Defendants' conduct and caused Plaintiff to suffer damages, including the loss of use of its bank accounts and the funds in those accounts.

134.     Plaintiff seeks damages, including compensatory and punitive damages, legal fees and costs, pursuant to 42 U.S.C. § 1983 and for violation of rights to procedural due process when Plaintiff was intentionally and with malice provided no pre-deprivation notice or hearing.

<u>**COUNT IX**</u>
<u>**DECLARATORY JUDGMENT**</u>

135.     Plaintiff incorporates the above-stated allegations by reference as if fully alleged herein.

136.     Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201(a) because an actual controversy exists between Plaintiff and Defendants concerning Plaintiff's due process rights under federal law and the Fourteenth Amendment.

137.     Additionally, the issues raised as to whether Maryland's procedural mechanism satisfies Plaintiffs due process rights are sufficiently definite and concrete as to allow a conclusive judgment.

138.     Declaratory relief is necessary because Plaintiff will suffer hardship if judicial consideration is withheld.  Writs of Garnishment have been issued by the Clerk of the Maryland Court.

---

[9] *See Connecticut v. Doehr,* 501 U.S. 1 (1994) (generally requiring notice and a hearing prior to attachment of property to secure potential judgment).

139.     Plaintiff therefore seeks declarations regarding the following: Defendants' invocation and/or use of the Maryland garnishment proceeding procedure set forth in Rules 2-645 and 2-645.1 to satisfy a judgment obtained by confession pursuant to Rule 2-611 violates the due process clause of the Fourteenth Amendment.

**COUNT X**
**INJUNCTIVE RELIEF**

140.     Plaintiff incorporates the above-stated allegations by reference as if fully alleged herein.

141.     An order enjoining the Defendants from taking any further action in the Circuit Court for Baltimore County, Maryland is necessary to prevent a miscarriage of justice and the frustration of this forum's public policy favoring the enforceability of forum selection clauses.

142.     Plaintiff has a likelihood of success on the merits of its claims against Defendants.

143.     As a direct and proximate cause of Defendants actions in the Circuit Court for Baltimore County, Maryland, Plaintiff has suffered damages including but not limited to, costs associated with defending the Maryland Case.

144.     Plaintiff has a substantial threat of irreparable harm if this Court does not enter an injunction prohibiting the Circuit Court for Baltimore County, Maryland from exercising jurisdiction over this matter. Such irreparable harm includes Plaintiff's ability to pay in full all outstanding bills; loss of profits; and, loss of property.

145.     The threatened injury to the Plaintiff outweighs the harm an injunction may cause the Defendants. The "harm" an injunction may cause to the Defendants consists of prohibiting this matter from proceeding before the Circuit Court for Baltimore County, Maryland, and requiring the matter to proceed in the Southern District of Florida as written and agreed to by the parties in the MPA. Such action does not constitute any harm to the Defendants because Defendants are residents of Florida and Defendants agreed to proceed in this forum. As a result, the threatened injury to the Plaintiff in the form of monetary losses outweighs any harm an injunction may cause the Defendants.

146.     Granting the injunction will not disserve the public interest. Granting the injunction will promote the public interest in enforcing forum selection clauses in contracts and having the same case heard in one forum, rather than two.

147.     The Court possesses discretionary power to enjoin Defendants from pursuing parallel litigation before the Circuit Court for Baltimore County, Maryland.

148.     The resolution of the matter before this Court would dispose of the action before the Circuit Court for Baltimore County, Maryland.

149.     Plaintiff would suffer great prejudice from being required to defend the action filed by Defendants in the Circuit Court for Baltimore County, Maryland, including, but not limited to, the additional costs of maintaining a defense in a forum where none of the parties reside and other than the forum agreed upon by the MPA.

150.     Plaintiff would suffer great prejudice from being required to defend the action filed by Defendants in the Circuit Court for Baltimore County, Maryland, since Plaintiff has been deprived of Due Process pursuant to the Fourteenth Amendment.

151.     Without the issuance of an injunction, Plaintiff would lose its legal right to an adjudication of the parties' dispute in this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for entry of a judgment finding and ordering as follows:

A.  awarding damages, including compensatory and punitive damages, legal fees and costs, pursuant to 42 U.S.C. § 1983 and for violation of rights to procedural due process when state officials provided no pre-deprivation notice or hearing, as specified in Count VIII;

B.  awarding declarations specified in Count IX;

C.  enjoining Defendants from taking any further action to execute and/or satisfy the confessed judgment under Maryland Rules 2-645 and 2-645.1 and ordering Defendants

to withdraw the writs of garnishment that have been served on Plaintiff's banking

institutions;

D.  finding that the subject loans violated the law as alleged herein;

E.  ordering Defendants to pay Plaintiff all amounts including principal and interest

collected pursuant to the subject loans;

F.  awarding Plaintiff actual and treble damages;

G.  awarding reasonable attorneys' fees and costs;

H.  awarding pre-judgment interest as allowable by law; and,

I.  awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, LB Pharma Services, LLC, demands a trial by jury on all of the triable issues of this complaint.

**FRIER & LEVITT, LLC**

By: _Marc v. Nocera_
Marc V. Nocera, Esq. (FL Bar # 17740)
Jonathan E. Levitt, Esq. (*pro hac vice* anticipated)
Dae Y. Lee, Esq. (*pro hac vice* anticipated)
*Attorneys for Plaintiff*
84 Bloomfield Avenue
Pine Brook, NJ  07058
phone: (973)618-1660
fax: (973)618-0650
email:  mnocera@frierlevitt.com

DATED:  February 20, 2020

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by electronic mail to the following:

Gabriel Berg, Esq
Kennedy Berg LLP
401 Broadway, Ste. 1900
New York, NY 10013
gberg@kennedyberg.com
*Attorney for Defendants*


DATED: February 20, 2020                         By: *Marc V. Nocera* _____
                                                      Marc V. Nocera