**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

LB PHARMA SERVICES, LLC,

                      *Plaintiff*,

v.

KRUNCHCASH, LLC AND JEFFREY
HACKMAN,

                      *Defendants*.

Civil Action No. 9:20-cv-80141-DMM

Hon. Donald M. Middlebrooks

## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

COMES NOW the Defendants KRUNCHCASH, LLC and JEFFREY HACKMAN, by and

through their undersigned counsel, and pursuant to all applicable rules of civil procedure

including the Federal Rules of Civil Procedure and Local Rules of this Court, to hereby file this,

their MOTION TO DISMISS PLAINTIFF'S SECOND AMEND COMPLAINT, filed herein,

with the accompanying MEMORANDUM OF LAW and exhibits in support thereof.

Dated: July 23, 2020

Respectfully submitted,

KENNEDY BERG LLP

By: /s/ Gabriel Berg
Gabriel Berg
*Pro Hac Vice*
gberg@kennedyberg.com
401 Broadway, Suite 1900
New York, NY 10013
Telephone: (212) 899-3400
Facsimile: (212) 899-3401
gberg@kennedyberg.com

*Counsel for Plaintiff KrunchCash LLC and*
*Jeffrey Hackman*

PALM LAW PARTNERS, P.A.

By: /s/ Craig M. Oberweger
Craig M. Oberweger (FBN 075076)
2101 NW Corporate Blvd.
Suite 410
Boca Raton, FL 33431
Telephone: (800) 520-2052
Facsimile: (561) 405-3158
craig@palmlawpartners.com

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

LB PHARMA SERVICES, LLC,

                *Plaintiff*,

v.

KRUNCHCASH, LLC AND JEFFREY
HACKMAN,

                *Defendants*.

Civil Action No. 9:20-cv-80141-DMM

Hon. Donald M. Middlebrooks

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**<u>PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................  1

UNDISPUTED FACTS AND PROCEDURAL HISTORY .................................  4

ARGUMENT .................................................................................................  6

I.      There Is no Subject Matter Jurisdiction over this Dispute.........................  6

        A.      LB Pharma Fails to Establish Diversity Jurisdiction....................  6

        B.      Joinder of Necessary and Indispensable Parties to the MPA
                Destroys Diversity Jurisdiction.......................................  8

        C.      There Is No Federal Question Raised by Count VIII ...................11

II.     The SAC Fails to State a Viable Claim.................................................13

        A.      Legal Standard ...............................................................13

        B.      Plaintiff Has Waived All Defenses, Claims and Rights of
                Setoff..........................................................................14

        C.      Plaintiff  Fails to State any Claim Premised on a Usurious
                Transaction (Counts I-V) .................................................15

                1.      The MPA Is Not a Loan .........................................15

                2.      Plaintiff Has Waived Any Plausible Usury Claim
                        or Defense .........................................................15

        D.      Plaintiff Fails to State a Claim for Personal Liability of
                Hackman (Count VI).......................................................16

        E.      Plaintiff Fails to State a Claim for Abuse of Process
                (Count VII)...................................................................17

        F.      Plaintiff's Claims for a Declaratory Judgment and Injunctive
                Relief Are Mooted by the Maryland Action (Counts IX and X) ..................18

        CONCLUSION.........................................................................20

## **TABLE OF AUTHORITIES**

Page

**Cases**

*Alliant Tax Credit Fund XVI, Ltd. v. Thomasville Cmty. Hous., LLC*,
   713 F. App'x 821 (11th Cir. 2017) ............................................................................. 8

*American Mfrs. Mut. Ins. Co. v. Sullivan*,
   526 U.S. 40 (1999) ................................................................................................ 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 13, 14, 17

*Beck-Ford Constr., LLC v. TCA Glob. Credit Master Fund, LP*,
   240 F. Supp. 3d 1256 (S.D. Fla. 2017) ................................................................. 16

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 570 (2007) ....................................................................... 13, 14, 17

*Billingsley v. Lincoln Nat. Bank*,
   271 Md. 683, 320 A.2d 34 (1974) ......................................................................... 13, 19

*Caribbean Telcoms., Ltd. v. Guy. Tel. & Tel. Co.*,
   594 F. Supp. 2d 522 (D.N.J. 2009) ....................................................................... 10

*Carozza v. Fed. Fin. Co.*,
   149 Md. 223, 131 A. 332, 43 A.L.R. 1 (1925) .................................................... 16

*Checkers Drive-In Rests., Inc. v. Tampa Checkmate Food Servs., Inc.*,
   805 So. 2d 941 (Fla. 2d DCA 2001) ..................................................................... 17

*Clinton v. Babbitt*,
   180 F.3d 1081 (9th Cir.1999) ............................................................................... 10

*Colson v. Pelgram*,
   259 N.Y. 370 (1932) ............................................................................................. 11

*Conley v. Gibson*,
   355 U.S. 41 (1957) ............................................................................................... 17

*Continental Mortgage Investors v. Sailboat Key, Inc.*
   395 So.2d at 511 (Fla. 1981) ............................................................................. 3, 15

*D.H. Overmyer Co. v. Trick Co.*,
   405 U.S. 174 (1972) ............................................................................................. 12

*Deutsche Bank Tr. Co. Americas v. Nash*,
   136 So. 3d 1267 (Fla. Dist. Ct. App. 2014) ......................................................... 14

*Enza Inc. v. We the People, Inc.,*
    838 F.Supp. 975 (E.D.Pa.1993) ........................................................................... 10

*Grimm v. Cty. Comm'rs of Washington County,*
    252 Md. 626, 250 A.2d 866, 870 (1969) ................................................................ 11

*James v. Gulf Life Ins. Co.,*
    66 So. 2d 62 (Fla. 1953) ...................................................................................... 18

*Land-Cellular Corp. v. Zokaites,*
    463 F. Supp. 2d 1348 (S.D. Fla. 2006) .............................................................. 3, 15

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,*
    675 F.2d 1169 (11th Cir. 1982) ........................................................................... 19

*Nabbie v. Orlando Outlet Owner, LLC,*
    237 So. 3d 463 (Fla. Dist. Ct. App. 2018) ............................................................ 18

*Penrose v. Canton Nat'l Bank,*
    147 Md. 200, 127 A. 852 (1925) .......................................................................... 16

*Plain Bay Sales, LLC v. Gallaher,*
    No. 9:18-CV-80581, 2020 WL 202960 (S.D. Fla. Jan. 14, 2020) ........................... 18

*Rabinowich v. Eliasberg,*
    159 Md. 655, 152 A. 437 (1930) .......................................................................... 16

*Reamer v. Kessler,*
    233 Md. 311, 196 A.2d 896, 901 (1964) ............................................................... 16

*Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C,*
    374 F.3d 1020 (11th Cir. 2004) .......................................................................... 7, 8

*Scarborough Assocs. v. Fin. Fed. Sav. & Loan Ass'n of Dade Cty.,*
    647 So. 2d 1001 (Fla. Dist. Ct. App. 1994) ....................................................... 2, 14

*SCI Collaboration, LLC, et al. v. Sports Car Intl.,*
    Case No. 3:20-cv-00170-AC, D.E.1 (D. Ore. Jan. 30, 2020) ..................................... 9

*Spear Group, Inc. v Florida Power & Light Co.,*
    13-80534-CIV, 2014 WL 272724 (S.D. Fla. Jan. 23, 2014) ................................... 10

*Viridis Corp. v. TCA Glob. Credit Master Fund, LP,*
    721 F. App'x 865 (11th Cir. 2018) ....................................................................... 16

*Waicker v. Colbert,*
    347 Md. 108 (1997) ............................................................................................ 19

## Other Authorities

7 Charles A. Wright, Arthur R. Miller & Mary K. Kane,
    Federal Practice and Procedure Section § 1604 (2nd ed 1997) ............................................... 10

Code (1957), Art. 23, § 125 ......................................................................................................... 16

F.S.A. § 768.295(3) ...................................................................................................................... 18

Fla. Stat. Ann. § 605.0407 ............................................................................................................. 8

Florida Enforcement of Foreign Judgments Act at §55.503(2) ................................................... 17

Restatement (Second) of Conflict of Laws § 203 cmt. b (1971) ............................................ 3, 16

## Rules

28 U.S.C. § 1332(a) ................................................................................................................. 9, 11

Fed. R. Civ. P. 5.1 ....................................................................................................................... 12

Fed. R. Civ. P. 8 .................................................................................................................... 13, 17

Fed. R. Civ. P. 12 ......................................................................................................................... 13

Fed. R. Civ. P. 19 ................................................................................................................ 9. 10, 11

Fourteenth Amendment, the under-color-of-state-law element of § 1983 .................................. 12

Maryland Rule 2-611 ................................................................................................................... 11

Maryland Rules 2-645 and 2-645.1 ............................................................................................ 11

## PRELIMINARY STATEMENT

This Court lacks subject matter jurisdiction over this action for three reasons.  First, LB Pharma Services, LLC ("**LB Pharma**" or "**plaintiff**") pled, in conclusory fashion, that its sole member is Ken Luna ("**Luna**"), allegedly a resident of the State of Texas at the time of the filing of this action -- while failing to rebut direct evidence that Nicole Buzzetta ("**Buzzetta**"), a Florida resident, also was a LB Pharma member at the time this action was filed.  Second, plaintiff strategically excluded from its Second Amended Complaint [D.E.44] ("**SAC**"), twelve necessary and indispensable signatories to the parties' Master Purchase Agreement (including the November 7, 2018 First Amendment to Master Purchase Agreement and the April 1, 2019 Second Amendment to Master Purchase Agreement) ("**MPA**"), three of whom are Florida residents or entities.  The necessary and indispensable joinder of three Florida plaintiffs destroys diversity jurisdiction and requires dismissal of this action.[1]

Third, though not pled by plaintiff, if this Court interprets Count VIII of the SAC, seeking to hold liable KrunchCash, LLC ("**KrunchCash**") and Jeffrey Hackman ("**Hackman**") through a contrived challenge to the constitutionality of a Maryland statute, as raising a potential federal question of law, the case must still be dismissed for five independent reasons.  The claim fails to establish federal question jurisdiction because: (a) the constitutional challenge was first asserted in the First Amended Complaint [D.E.6] ("**FAC**"), weeks after jurisdiction was conferred over LB Pharma in an action filed by KrunchCash in Baltimore County Circuit Court (the "**Maryland Action**"), rendering Count VIII second-filed; (b) the challenged Maryland Rule authorizing writs of garnishment to issue to freeze assets (as opposed to seize assets) following confession of

---

[1] Plaintiff's co-signatories identified in the SAC as "Plaintiff Pharmacies," are listed at page 2, n.3 of the SAC. They include Price Choice Pharmacy #3, LLC, a Florida limited liability company, Eagle Lake Pharmacy, Inc., a Florida corporation, and Nicole Buzzetta, a Florida resident who personally guaranteed the MPA.

judgment is constitutional under well-established precedent interpreting U.S. Supreme Court decisions; (c) KrunchCash engaged in "merely private conduct" by filing the writs of garnishment because the Baltimore County Circuit Court caused them to to issue, while Hackman took no action because he is not a plaintiff in the Maryland case[2]; (d) Count VIII was required to be brought in Maryland with notice to the Maryland Attorney General; and (e)  LB Pharma fails to plead that any of its assets were frozen -- and the writs of garnishment have been vacated in any event -- leaving LB Pharma incapable of pleading damages.

On these grounds, alone, this Court lacks subject matter jurisdiction and the SAC should be dismissed.  But, even if this Court ignored the SAC's jurisdictional defects, plaintiff's failure to confront the applicable, dispositive provisions of the MPA defeats the entirety of the SAC.

First, plaintiff seeks to avoid the $6.76 million debt owed to KrunchCash by plaintiff and its twelve co-signatories to the MPA (collectively, "**Defendants in the Maryland Action**") by ignoring Section 17 of the MPA, in which all Defendants in the Maryland Action agreed to confess judgment in the event of a breach "in any court of record."  Exhibit 1, §17.  Under the same section of the MPA, a confession of judgment "may be exercised on one or more occasions or from time to time" against the Defendants in the Maryland Action.  *Id.*

Second, in Section 20(o) of the MPA, entitled "Waiver of Defense," Defendants in the Maryland Action agreed to "irrevocably waive[] any and all defenses, counter-claims and rights of setoff or recoupment with respect to payment of all amounts payable . . . ."  *Id.* at §20(o).  This waiver is enforceable under Florida law and precludes the SAC in its entirety.  *Scarborough*

---

[2] The threadbare allegations against Hackman, a Florida resident, amount to identifying him as an officer of KrunchCash.  Simply serving as an officer of a limited liability company does not expose Hackman to any personal liability.  Plaintiff named Hackman in the SAC to harass him.

*Assocs. v. Fin. Fed. Sav. & Loan Ass'n of Dade Cty.*, 647 So. 2d 1001, 1003–04 (Fla. 3d DCA 1994) (waiver of defenses to debt owed is enforceable).

Third, in addition to reading out of the MPA provisions that are fatal to the SAC, plaintiff attempts to rewrite the MPA to redefine the fundamental nature of the parties' transaction.  The MPA, as its name suggests, is a Master Purchase Agreement – not a loan.  The purpose of the MPA is identified as follows:  "Seller desires to sell to Buyer all of its right, title and interest in and to certain mutually agreed upon insurance claims for medical goods and services from insurance companies, thereby creating healthcare insurance receivables and accounts receivable ('Claims Receivables')."  *Id.* at 1.  The Claims Receivables, in turn, were to be repurchased by plaintiff and its co-signatories, which they admittedly failed to do.  SAC at ¶¶ 17-18.  Plaintiff's usury claims, as articulated in Counts I-V of the SAC, are improper because the MPA is not a loan agreement, but a factoring agreement.

Fourth, even if the MPA had involved a loan, the SAC must still be dismissed because under Florida law plaintiff's "irrevocable" waiver of all "defenses, counter-claims and rights of setoff or recoupment with respect to payment of all amounts payable," defeats any assertion of any violation of Florida usury laws.  *See Land-Cellular Corp. v. Zokaites*, 463 F. Supp. 2d 1348, 1361 (S.D. Fla. 2006) ("In *Continental Mortgage Investors*, the Court also reiterated this principle and stated:  'Subject only to rare exceptions, the parties will expect on entering a contract that the provisions of the contract will be binding upon them . . . .  Usury is a field where this policy of validation is particularly apparent."  395 So.2d at 511 (citing Restatement (Second) of Conflict of Laws § 203 cmt. b (1971)).  Worse, plaintiff was made aware of this binding Florida case law barring Counts I-V by defendants, who invited plaintiff to provide any contrary Florida law.  Unable to rebut this single line of cases, Plaintiff filed the SAC and knowingly falsely accused

3

defendants of committing a crime.  To the extent this Court retains jurisdiction over this matter, defendants assuredly will pursue a motion to strike Plaintiff's deliberately false accusation.

Plaintiff's original Complaint here was amended to track the same waived and baseless claims asserted in a matter filed in this Court, styled, *Jonathan S. Resnick et al. v. KrunchCash and Hackman*, Case No. 9:20-cv-80163-WPD.  Putting to one side the "wisdom" of blindly following KrunchCash-debtor Jonathan S. Resnick, who has filed for bankruptcy to try to avoid his $14 million debt to KrunchCash, and whose three law firms are in chapter 11 bankruptcy under the stewardship of a chapter 11 trustee, LB Pharma's SAC should be dismissed for lack of subject matter jurisdiction.  If this Court maintains jurisdiction over this case, alternatively the Court should dismiss the SAC for failure to state any legally viable claim.

**UNDISPUTED FACTS AND PROCEDURAL HISTORY**

Though concealed by plaintiff in the SAC, the MPA is executed by KrunchCash, on the one hand and LB Pharma, Buzzetta, Luna, JSW Prosperity, LLC d/b/a 1 Stop Pharmacy, Care Pharmacy, LLC d/b/a Wilson County Pharmacy, Omega Care Pharmacy, Inc., Eagle Lake Pharmacy, Inc. ("**Eagle Lake**"), Sam's Pharmacy, Inc. d/b/a Sam's Pharmacy, Lake Side Pharmacy, Our Pharmacy, LLC d/b/a Serve and Save Pharmacy, BN Specialty, LLC, Price Choice Pharmacy #3 LLC ("**Price Choice**") and SHB RX LLC, on the other hand.[3]  From July 2018 through May 2019, KrunchCash paid an aggregate amount of $34,320,931.42 to purchase an aggregate amount of $35,918,181.72 in Claims Receivables from Defendants to the Maryland Action at a discounted price.  Defendants in the Maryland Action repurchased millions of the Claims Receivables until they all breached the MPA by ceasing all repurchases in March 2019.[4]

---

[3] A yet-to-be named pharmacy called Tank Chesterfield, LLC, d/b/a Chesterfield Pharmacy is also liable under the MPA.

[4] By claiming that it owes $0 in the SAC, plaintiff proudly concedes that it ceased all repayments under the MPA.

Over the course of July 2018 to May 2019, Defendants in the Maryland action entered into over twenty separate Purchase Addendums, which include as an exhibit a line item description of each pharmacy's Claims Receivables being purchased.  *See, e.g.*, Exhibit 2.

At the time of the filing of the SAC, Buzzetta was a Florida resident and a member of LB Pharma.  Exhibit 3.  Price Choice is a Florida limited liability company.  Exhibit 4.  Eagle Lake was a Florida corporation.  Exhibit 5.

The first operative provision in the MPA – excluded entirely by the SAC – is Section 17. It provides:

> Consent to Judgment. In the event that Seller fails to observe any payment obligations hereunder, **without notice to Seller**…Buyer will be entitled to empower any attorney designated by Buyer, or any clerk of any court of record, to appear for Seller **in any court of record and confess judgment, or a series of judgments**, against Seller in favor of Buyer for any and all amounts payable to Buyer pursuant to this Agreement, plus all fees, costs, expenses, damages, charges, costs of suit, **attorneys' fees**, and all other amounts now or hereafter payable by Seller to Buyer.  **Such authority may be exercised on one or more occasions or from time to time**….

Exhibit 1, §17 (Emphasis added).  All parties to the MPA agreed:  KrunchCash has the right to obtain confession of judgment in any jurisdiction against all of the Defendants in the Maryland Action.  It also has the right to its legal fees and costs "in the event that Seller fails to observe any payment obligations" in the MPA.  *Id.* Attorneys' fees and costs continue to accrue. KrunchCash reserves the right to seek repayment of all attorneys' fees incurred in this action.

Section 20(o) of the MPA, entitled "Waiver of Defenses," provides:  "Seller hereby irrevocably waives any and all defenses, counter-claims and rights of setoff or recoupment with respect to payment of all amounts payable to Buyer, and Seller promises and covenants not to seek to avoid payment of any amounts payable to Buyer."  *Id.* at §20(o).

Defendants in the Maryland Action are in default under the terms of the MPA by, among other things, failing to "repurchase each tranche of the Claims Receivables from Buyer on or before the date set forth on the Purchase Addendum ('Repurchase Period')." *Id.*, §5, §15. The failure to repurchase the Claims Receivables constitutes an "Event of Default" under Section 15 of the MPA. *Id.*, §15. In turn, section 16 of the MPA provides: "If any Event of Default occurs, all amounts owed under this Agreement will become immediately due and payable without any action by Buyer, Seller, or any other person." *Id.*, §16. As of February 1, 2020, the balance due and owing under the MPA was $6,760,000.

Each Defendant in the Maryland Action agreed to joint and several liability under the MPA. Section 20(g) of the MPA provides:

> The undersigned, intending to be legally bound, hereby consent to the terms and conditions of this Agreement, join in this Agreement, and jointly and severally guarantee the payment of all obligations and performance of all agreements hereunder, including without limitation payment in full of all sums which may become due and owing to Buyer. This guarantee of payment and performance shall remain in full force and effect into the future. Liability of the undersigned shall be continuing, absolute and unconditional.

*Id.*, §20(g). In addition, Ken Luna and Buzzetta provided personal guarantees to repurchase the receivables, agreeing to joint and several liability of the entirety of the debt. *Id.* at 9.

LB Pharma moves to dismiss by ignoring all of the binding provisions of the MPA that defeat the SAC as a matter of law.

**ARGUMENT**

**I.      There Is no Subject Matter Jurisdiction over this Dispute**

**A.      LB Pharma Fails to Establish Diversity Jurisdiction**

On June 15, 2020, this Court issued a paperless Order, holding:

> Plaintiff alleges this Court has jurisdiction over this case based on diversity. (See DE 6 at 1). However, whether complete diversity of citizenship exists is unclear.

> The party asserting diversity must prove the citizenship of all the members of limited liability companies. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C*, 374 F.3d 1020, 1022 (11th Cir. 2004). The operative complaint does not identify the citizenship of each of Plaintiff's members.

[D.E.40]. This Court Ordered LB Pharma to submit "a declaration identifying the citizenship of each of its members" and the Court provided Defendants with an opportunity to submit any contrary evidence.

Following the parties' submissions on June 19, this Court again issued a paperless Order. On June 22, 2020, this Court held:

> In response to Order 40 , Plaintiff filed a declaration of Ken Luna 41 and the parties jointly filed a statement regarding the basis for jurisdiction 42.  Plaintiff's position is that this Court has jurisdiction based on diversity of citizenship 42 . Mr. Luna's declaration states that he is the 'sole shareholder of LB Pharma Services, LLC' and that he is a citizen and resident of Texas [41-1]. The declaration lacks any indication that Mr. Luna was the sole member of LB Pharma and domiciled in Texas at the time the complaint was filed. Additionally, a review of the record indicates that a Florida resident may have been a member of LB Pharma at the time the complaint was filed. Accordingly, Plaintiff shall file an amended complaint by July 3, 2020, correcting the diversity allegations or file a notice of dismissal by that date.

[D.E.43].  On July 2, 2020, plaintiff filed the SAC.  The only substantive change made in the SAC was Plaintiff's assertion that:  "Ken Luna was the sole member of Plaintiff, was a citizen of Texas, and domiciled in Texas at the time Plaintiff filed the original Complaint on January 30, 2020 in this Court.  Therefore, Plaintiff, LB Pharma Services, LLC is a citizen of Texas."  SAC, ¶1, (footnote omitted). The filing of the SAC mooted Plaintiff's Motion to Dismiss the FAC.  [D.E.47]

As an evidentiary matter, LB Pharma's jurisdictional assertion in the SAC is insufficient to establish diversity jurisdiction.  As this Court instructed plaintiff in its first paperless Order: "The party asserting diversity must **prove** the citizenship of all the members of limited liability companies. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C*, 374 F.3d 1020, 1022 (11th Cir. 2004)."  [Dk. No. 40] (emphasis added).  A conclusory statement of the residency of all

members of a limited liability company does not meet the evidentiary rigors required to establish diversity jurisdiction. *Alliant Tax Credit Fund XVI, Ltd. v. Thomasville Cmty. Hous., LLC*, 713 F. App'x 821, 825 (11th Cir. 2017) ("[T]he bare declarations in the joint statement that certain natural-person members of the Alliant plaintiffs were citizens of certain states was too conclusory. . . .").

Worse, the conclusory assertion fails to rebut evidence submitted by Defendants. In June 2018, during due diligence of LB Pharma, KrunchCash COO, Jeffrey Hackman, was provided with an organizational chart of Plaintiff's businesses by Ken Luna. [D.E.42, Ex. 1]. The organizational chart shows two 50%-50% owners of LB Pharma, Luna and Buzzetta, hence the "L" and "B" in Plaintiff's name. Consistently, in over twenty Purchase Addenda to the MPA, executed in 2018 and 2019, both Luna and Buzzetta executed the agreements as "Managers" of Plaintiff. [D.E.42, Ex. 2]. Under Florida law a "manager" of a limited liability company is synonymous with "member." *See* Fla. Stat. Ann. § 605.0407 (the default rule is that "a limited liability company is a member-managed limited liability company"). Consistent with Court's holding that "a review of the record indicates that a Florida resident may have been a member of LB Pharma at the time the complaint was filed," Plaintiffs failed to submit any documents to disprove defendants' assertions in response to two Orders of this Court. The SAC must be dismissed because Plaintiff's jurisdictional burden is unmet.

B.     **Joinder of Necessary and Indispensable Parties to the MPA Destroys Diversity Jurisdiction**

On January 30, 2020, the same date that Plaintiff filed the Complaint in this action [D.E.1], Buzzetta, Luna, and SCI Collaboration, LLC, a Florida limited liability company (owned by Luna and Buzzetta), commenced an action in the United States District Court for the District of Oregon, styled, *SCI Collaboration, LLC, et al. v. Sports Car Intl.,* Case No. 3:20-cv-00170-AC, D.E.1 (D. Ore. Jan. 30, 2020). [D.E.42, Ex. 3] In their complaint in that action, Plaintiffs assert, "Plaintiff

Nikki Buzzetta . . . is a resident of Florida." [D.E. 42, Ex. 3 at ¶ 2]. Accordingly, this Court may take judicial notice that, as of the date this action was commenced, Buzzetta was a Florida resident. *See* Fed. R. Evid. 201(b)(2) (holding that, at any time, including on a motion to dismiss, this Court may take judicial notice of facts "whose accuracy cannot reasonably be questioned.").

Plaintiff's failure to include as parties to this action all signatories to the MPA was deliberate: Buzzetta, and MPA signatories Price Choice Pharmacy #3, LLC and Eagle Lake Pharmacy, Inc. are Florida residents and entities, respectively. The addition of Buzzetta and each of the necessary and indispensable Florida residents and MPA signatories would destroy diversity jurisdiction and divest this Court of jurisdiction under 28 U.S.C. § 1332(a), the only basis of jurisdiction pled by plaintiff. LB Pharma, a Delaware entity, cherry-picked itself in a strategic gambit, bringing this action to the exclusion of all other signatories to the MPA – including the three Florida entities and Buzzetta. Exhibits 3-5. Yet, all signatories to the MPA are jointly and severally liable under section 20(g) and the personal guarantees included in the MPA. The necessary inclusion of the Florida parties in this action destroys diversity jurisdiction with KrunchCash, a Florida limited liability company.

Under Federal Rule of Civil Procedure 19, the Court undertakes a two-step inquiry to determine whether the Defendants in the Maryland Action are necessary and indispensable parties.

> First, under Rule 19(a), the court asks whether [the co-signatories are] a "person to be joined if feasible," i.e. whether [they are] a "necessary party" to the litigation. A party is deemed necessary under Rule 19(a)(1) if: (1) its absence will prevent the court from granting complete relief to the existing parties, or (2) the party claims an interest relating to the subject matter of the action and its absence in the litigation may (i) as a practical matter impair or impede its ability to protect that interest, *or* (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest. See Fed.R.Civ.P. 19(a)(1); 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Section § 1604 (2nd ed 1997). If the court concludes that [the co-signatories are] a necessary party under Rule 19(a)(1), then it must order [their] joinder, if feasible. Fed.R.Civ.P. 19(a)(2). If the

court concludes that [the co-signatories are] necessary part[ies], but that [their] joinder is not feasible, then under Rule 19(b) it must then determine whether, "in equity and good conscience," the action should proceed among the existing parties without [them] or be dismissed. Fed.R.Civ.P. 19(b). *Enza Inc. v. We the People, Inc.,* 838 F.Supp. 975, 977 (E.D.Pa.1993).

*Spear Group, Inc. v Florida Power & Light Co.*, 13-80534-CIV, 2014 WL 272724, at *2 (S.D. Fla. Jan. 23, 2014).

Under Fed. R. Civ. P. Rule 19, all contracting parties to the MPA are necessary and indispensable because each has an "interest in the outcome of this litigation." *See, e.g., Spear Grp., Inc*, 2014 WL 272724, at *4. In fact, "the general rule, in breach of contract actions, that all parties to the contract are deemed necessary ones to the litigation." *Id.* at *3. Parties to a contract are indispensable when a suit concerns the rights and obligations afforded by the contract. *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir.1999) (in order to adjudicate an attack on an agreement, a court must have "jurisdiction over the parties to that agreement"); *see also Caribbean Telcoms., Ltd. v. Guy. Tel. & Tel. Co*., 594 F. Supp. 2d 522, 532 (D.N.J. 2009) (recognizing that "a contracting party is the paradigm of an indispensable party"). Allowing this action to proceed with LB Pharma as the only Plaintiff would undoubtedly prejudice KrunchCash, and all Defendants to the Maryland Action, because they would be exposed to a "potential risk of incurring double, multiple or otherwise inconsistent obligations." Fed. R. Civ. Pro 19(a)(2)(i) and (ii). The feasibility of joining each signatory to the MPA in this action is demonstrated by their inclusion in the first-filed Maryland action, which properly names all parties to the MPA. *See*, e.g., Exhibit 6.

The addition of Florida entities Price Choice, Eagle Lake and Florida resident Buzzetta destroys diversity jurisdiction and divests this Court of subject matter jurisdiction under 28 U.S.C. § 1332(a), the only basis of jurisdiction pled by plaintiff. As a result, the SAC must be dismissed.

10

### C.     There Is No Federal Question Raised by Count VIII

If this Court reaches the unpled question of whether Plaintiff's Count VIII creates federal question jurisdiction, it should dismiss the SAC as facially improper.  The basis of Count VIII is the allegation that "Defendants' use of Maryland's garnishment procedure as set forth in Maryland Rules 2-645 and 2-645.1 to satisfy judgment obtained by confession under Maryland Rule 2-611 violates the due process clause of the Fourteenth Amendment."  SAC ¶ 66.

As an initial matter, Claim VIII was asserted in the First Amended Complaint ("**FAC**") weeks after KrunchCash obtained confession of judgment in Maryland.  *Compare* [D.E.6] *with* Exhibit 6.  Consequently, the SAC should be dismissed as a procedurally improper second-filed action. Under settled Maryland law, where, as here, "separate actions have been instituted between the same parties in reference to the same subject-matter in courts having concurrent jurisdiction, the court which first obtains jurisdiction with adequate power to administer full justice should continue to exercise it."  *See, e.g., Colson v. Pelgram*, 259 N.Y. 370, 375 (1932), *cited approvingly by Grimm v. Cty. Comm'rs of Washington County*, 252 Md. 626, 635, 250 A.2d 866, 870 (1969). Recently, the Baltimore Circuit considered whether an exclusive Florida venue provision provision precluded confession of judgment in Baltimore in an action brough by KrunchCash against Jonathan Resnick and related parties.  In considering virtually identical language included in the MPA, permitting confession  of judgment in any court and restricting venue to Florida, the Baltimore Circuit Court held that it had jurisdiction over KrunchCash's first-filed action.  Exhibit 7.  The second-filed SAC does not provide any jurisdictional basis for this Court to retain authority over this matter.

In addition, plaintiff has not noticed or joined the Attorney General of the State of Maryland, as required under Fed. R. Civ. P. 5.1.  ("A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute **must**

**promptly**: . . . serve the notice and paper on the . . . state attorney general if a state statute is questioned . . . .") (emphasis added) Fed. R. Civ. P. 5.1.

Moreover, in obtaining writs of garnishment, KrunchCash has taken only private action. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'") (citations omitted). Hackman, a nonparty to the Maryland action, took no action related to the issuance of the writs of garnishment.

Next, LB Pharma does not allege that any of its assets were frozen by any writ of garnishment in Maryland. LB Pharma also ignores that the writs of garnishments were vacated. [D.E.46]. Having failed to allege any damages, the claim also must be dismissed.

Under any circumstances, LB Pharma's challenge of Maryland law as an impermissible transgression of its constitutional due process rights is futile. In fact, this argument regarding a substantially similar Ohio statute has been rejected by the United States Supreme Court. *See D.H. Overmyer Co. v. Trick Co.*, 405 U.S. 174 (1972) (holding that Ohio's confessed judgment procedure does not violate the debtor's due process rights under the 14th Amendment to the U.S. Constitution because the right to receive notice prior to the entry of civil judgment is subject to waiver). In *Overmyer*, the Supreme Court noted that the debtor had "voluntarily, intelligently, and knowingly waived the rights it otherwise possessed to prejudgment notice and hearing." *Id.* at 187. Here, Defendants in the Maryland Action waived notice and all defenses, just as the defendants in *Overmyer* did. Exhibit 1, §17 and §20(o). After the Supreme Court's decision in *Overmyer*, Maryland courts explicitly held that the Maryland confessed judgment rules – and specifically Maryland Rules governing a prior version of the identical writ of garnishment statute

-- were constitutional. *See Billingsley v. Lincoln Nat. Bank*, 271 Md. 683, 692, 320 A.2d 34, 39 (1974) (holding that "Rule 645 is constitutional on its face").

The second-filed Count VIII fails to establish any basis for federal subject matter jurisdiction as a matter of law. Without diversity of citizenship or federal question jurisdiction, there is no basis in this action for the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). This action must be dismissed.

## II.      The SAC Fails to State a Viable Claim

To the extent this Court finds that it has jurisdiction over the subject matter of the action, in the alternative, the SAC fails to state any viable cause of action and the case should be dismissed in its entirety.

### A.      Legal Standard

To survive a motion to dismiss, under Fed. R. Civ. P. 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering such a motion, this Court should undertake a two-step review of the SAC. In the first step, the Court must distinguish between legal conclusions and factual allegations, sifting out the legal conclusions and leaving only the factual allegations. *Id*. at 680-81. The legal conclusions "are not entitled to the assumption of truth." *Id*. at 680. The Court must read the factual allegations in light of Fed. R. Civ. P. 8(a)(2), which requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(a)(2) demands more than "[a] pleading that offers 'labels and conclusions[.]'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555).

If, after completing this first step, the Court decides that the SAC is more than just a compilation of legal conclusions—that it contains sufficient factual allegations to give defendants

fair notice—it must take the second step of deciding whether the SAC states a plausible claim for relief. *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

### B.       Plaintiff Has Waived All Defenses, Claims and Rights of Setoff

The SAC utterly fails to mention section 20(o) of the MPA, entitled "Waiver of Defense", in which plaintiffs agreed to: "irrevocably waive[] any and all defenses, counter-claims and rights of setoff or recoupment with respect to payment of all amounts payable . . . ." Under Florida law, the waiver of all defenses, claims and rights of setoff is fully enforceable as to each claim asserted in the SAC. *See, e.g., Deutsche Bank Tr. Co. Americas v. Nash*, 136 So. 3d 1267, 1269 (Fla. 2 DCA 2014) (enforcing party's waiver of certain defenses, reasoning that "[t]he trial court must strictly enforce the parties' agreement unless a party demonstrates grounds for withdrawal or rescission of the stipulation"); *see also Scarborough Assocs. v. Fin. Fed. Sav. & Loan Ass'n of Dade Cty.*, 647 So. 2d 1001, 1003–04 (Fla. 3d DCA 1994) (reversing and remanding action to lower court holding that parties' agreement "clearly waived all . . . defenses or counterclaims through and including" date certain) (collecting cases).

Section 20(o) of the MPA defeats all claims in the SAC because each claim amounts to an attempt to assert "defenses, counter-claims and rights of setoff or recoupment with respect to payment of all amounts payable" to KrunchCash.

### C.       Plaintiff Fails to State any Claim Premised on a Usurious Transaction (Counts I-V)

#### 1.       The MPA Is not a Loan

Even if Plaintiff had not waived all defenses barring the SAC in its entirety, the MPA, as its name suggests, is a Master Purchase Agreement – not a loan. The purpose of the MPA is

identified as follows:  "Seller desires to sell to Buyer all of its right, title and interest in and to certain mutually agreed upon insurance claims for medical goods and services from insurance companies, thereby creating healthcare insurance receivables and accounts receivable ('Claims Receivables')."  Exhibit 1 at 1.  The Claims Receivables, in turn, were to be repurchased by plaintiff and its co-signatories, which they failed to do.  SAC ¶¶ 17-18.  Therefore, plaintiff's usury claims, as articulated in Counts I-V of the SAC, are improper because the MPA is not a loan agreement.

## 2.    Plaintiff Has Waived Any Plausible Usury Claim or Defense

Plaintiff alleges in Counts I-V that the transactions under the MPA are impermissibly usurious, rendering KrunchCash civilly liable and exposed to criminal penalties.  Defendants served notice on counsel for Plaintiffs of Florida law precluding Counts I-V, even if the MPA had been a loan.  It is well established that a waiver of defenses, claims and rights of setoff precludes the assertion of the usury defense, or in this matter, a usury claim.  *See Land-Cellular Corp. v. Zokaites*, 463 F. Supp. 2d 1348, 1361 (S.D. Fla. 2006) ("Florida law also recognizes the importance of protecting the justified expectations of parties to a contract.  In *Continental Mortgage Investors*, the Court also reiterated this principle and stated:  'Subject only to rare exceptions, the parties will expect on entering a contract that the provisions of the contract will be binding upon them . . . .  Usury is a field where this policy of validation is particularly apparent . . . .  [T]he courts deem it more important to sustain the validity of a contract, and thus to protect the expectations of the parties, than to apply the usury law of any particular state.'  395 So.2d at 511 (citing Restatement (Second) of Conflict of Laws § 203 cmt. b (1971))."  463 F. Supp. 2d 1348, 1361.  *See, e.g., Beck-Ford Constr., LLC v. TCA Glob. Credit Master Fund, LP*, 240 F. Supp. 3d 1256, 1279 (S.D. Fla. 2017), *aff'd in part, rev'd in part sub nom. Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 721 F. App'x 865 (11th Cir. 2018).

Consistently, this Court has validated the Florida Supreme Court's determination that:

> [U]sury is purely a personal defense created by statute for the protection of borrowers, and therefore, any borrower may waive his right to claim the benefit of such statute.  Moreover, usury being a purely personal defense which may be availed of, or waived, at the election of the party aggrieved, it has no []special claims upon the indulgence and favor of the court, but must be disposed of upon the same principles and in the same manner as other defenses.

*Beck-Ford Constr., LLC,* 240 F. Supp. 3d at 1280 (internal citations and quotation marks omitted).

Plaintiffs' waiver of all defenses and claims bars Counts I-V, each of which is grounded in an assertion of usury.  Worse, plaintiff's counsel ignored an invitation by defendants to provide any contrary Florida law permitting a usury claim where defenses and claims are irrevocably waived.  Unable to provide any authority, Plaintiff knowingly – and falsely – accused Defendants of committing a crime in the SAC.[5]

### D.      Plaintiff Fails to State a Claim for Personal Liability of Hackman (Count VI)

Count VI of the SAC, seeking to hold Hackman personally liable for KrunchCash's actions, is a minimalistic recitation of Hackman's position at KrunchCash.  Plaintiff alleges, "upon information and belief" in his capacity as "the founder, sole shareholder, sole director, president, CEO and manager of KrunchCash," Hackman should be held liable for *KrunchCash's* purportedly "tortious and unlawful conduct."  SAC ¶¶ 109, 117.  It is well established that an officer "cannot be held personally liable for the corporation's actions simply by reason of his official relation to the corporation."  *See Checkers Drive-In Rests., Inc. v. Tampa Checkmate Food Servs., Inc.*, 805 So. 2d 941, 944 (Fla. 2d DCA 2001).  Count VI of the SAC amounts to "threadbare recitals of the

---

[5] The result would be no different under Maryland law.  It is well-established under Maryland law that usury defenses are inapplicable to corporations and individuals who become guarantors of a corporate borrower's loan contracts.  *Reamer v. Kessler*, 233 Md. 311, 319, 196 A.2d 896, 901 (1964) (affirming holding that defendant was properly held liable for usurious interest on mortgages given by corporate borrowers reasoning that corporations cannot plead usury under Code (1957), Art. 23, § 125, and that "the denial of the right to plead usury extends to individuals who become accommodation endorsers, sureties or guarantors of a corporate borrower's loan contracts," citing *Penrose v. Canton Nat'l Bank*, 147 Md. 200, 127 A. 852 (1925); *Carozza v. Fed. Fin. Co.*, 149 Md. 223, 131 A. 332, 43 A.L.R. 1 (1925), and *Rabinowich v. Eliasberg*, 159 Md. 655, 152 A. 437 (1930).

elements of a cause of action, supported by mere conclusory statements"; and, it "do[es] not suffice" to state a claim of personal liability against Hackman. *Iqbal*, 556 U.S. at 663.

A complaint does not satisfy Fed. R. Civ. P. 8(a)(2) if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557)). Without sufficient factual allegations to support Count VI, it fails to fulfill the essential purpose of Fed R. Civ. P. 8(a)(2)—to "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

###   E.      Plaintiff Fails to State a Claim for Abuse of Process (Count VII)

Plaintiff alleges that KrunchCash filed suit in Maryland in "retaliation" for the filing of this action.  What plaintiff labels "retaliation" is, in fact, KrunchCash's bargained-for right to seek a confession of judgment in "any court" under the MPA.[6]   The MPA provides for a confessed judgment "in any court" precisely because collection efforts often involve pursuing dishonorable debtors wherever they may have transferred assets to avoid payment obligations.  To interpret the MPA otherwise would be to render §17 meaningless.  "An interpretation of a contract which gives a   reasonable,   lawful   and   effective meaning   to   all   of   the   terms   is   preferred   to an interpretation which leaves a part unreasonable, unlawful or of no effect." *Nabbie v. Orlando Outlet Owner, LLC*, 237 So. 3d 463, 466 (Fla. 5th DCA 2018) (internal citations and quotation marks omitted).  As a practical matter, to preclude confession of judgment in Maryland under the MPA would incentivize Defendants in the Maryland Action to transfer assets to a state other than Florida – in order to avoid paying debts owed – an absurd result. *See James v. Gulf Life Ins. Co.*,

---

[6] Plaintiffs' argument that the confessed judgment would be void in Florida is belied by the fact that Florida courts give full faith and credit to out-of-state confessed judgments domesticated in Florida. *See* Florida Enforcement of Foreign Judgments Act at §55.503(2).

66 So. 2d 62, 63 (Fla. 1953) ("[An] interpretation which evolves the more reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided") (internal citations and quotation marks omitted).

Plaintiff's own cited authority, SAC at ¶ 119, holds that "a claim for abuse of process does not allow plaintiffs to attack defendants merely for filing a lawsuit." *Plain Bay Sales, LLC v. Gallaher*, No. 9:18-CV-80581, 2020 WL 202960, at *6 (S.D. Fla. Jan. 14, 2020).[7]  Florida's anti-SLAPP legislation does not substantiate such a claim to preclude the enforcement of a clear and unambiguous contract between sophisticated parties.  See F.S.A. § 768.295(3).

### F.    Plaintiff's Claims for a Declaratory Judgment and Injunctive Relief Are Mooted by the Maryland Action (Counts IX and X)

Finally, the Maryland Action moots the present action because it is the first-filed action with jurisdiction over all signatories to the MPA, and though baseless, Count IX for a Declaratory Judgment seeking to hold the Maryland writs of garnishment to be unconstitutional, and Count X for Injunctive Relief should have been brought in Maryland for all of the reasons articulated above.[8]  Each of these claims also was asserted weeks after KrunchCash obtained confession of judgment.  "As a general rule, courts will not entertain a declaratory judgment action if there is pending, at the time of the commencement of the action for declaratory relief, another action or proceeding involving the same parties and in which the identical issues that are involved in the declaratory action may be adjudicated." *Waicker v. Colbert*, 347 Md. at 113.[9]

---

[7] Count VII also alleges thaet text messages from Hackman to co-signatories and non-parties Luna and Buzzetta – as part of inadmissible settlement discussions -- were meant to "threaten, intimidate and scare" plaintiff.  SAC at ¶ 126. Ignoring the transgression of publicly revealing confidential settlement discussion, no case holds that privileged settlement communications give rise to an "abuse of process" claim.

[8] A claim for injunctive relief that argues irreparable harm fails where a motion to obtain an injunction is not filed immediately.

[9] Similarly, under Florida law, "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982).

The place and time for plaintiff to have asserted its waived and baseless claim under the Fourteenth Amendment would have been on the Defendants in the Maryland Action's motion to vacate the confessed judgments in Maryland.  Having failed to do so, they waived this defense both in the MPA and in the Maryland Action.  *See Billingsley v. Lincoln Nat. Bank*, 271 Md. 683, 692, 320 A.2d 34, 39 (1974) ("Fortunately, we are not required to chart a new course in dealing with this important contention, since the Supreme Court has recently addressed itself to the very issues presented here.").[10]

Finally, setting aside the glaring jurisdictional defects here and focusing on the merits, in the alternative this Court should dismiss the SAC.

---

[10] The SAC is not saved by the addition of Mr. Hackman, who is not a party to the Maryland Action, as a defendant here.  *See Waicker v. Colbert*, 347 Md. 108, 113 n.2 (1997) ("[T]he mere fact that an unnecessary party is joined, either as a plaintiff or a defendant will not prevent the operation of the rule to bar the declaratory action.") (internal citation omitted).

III.    CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss the SAC should be granted.

Dated: July 23, 2020                          Respectfully submitted,

                                              KENNEDY BERG LLP

                                              By: /s/ Gabriel Berg
                                              Gabriel Berg
                                              *Pro Hac Vice*
                                              gberg@kennedyberg.com
                                              401 Broadway, Suite 1900
                                              New York, NY 10013
                                              Telephone: (212) 899-3400
                                              Facsimile: (212) 899-3401
                                              gberg@kennedyberg.com

                                              *Counsel for Plaintiff KrunchCash LLC and*
                                              *Jeffrey Hackman*

                                              PALM LAW PARTNERS, P.A.

                                              By: /s/ Craig M. Oberweger
                                              Craig M. Oberweger (FBN 075076)
                                              2101 NW Corporate Blvd.
                                              Suite 410
                                              Boca Raton, FL 33431
                                              Telephone: (800) 520-2052
                                              Facsimile: (561) 405-3158
                                              craig@palmlawpartners.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by CM/ECF to all parties registered to receive electronic notices of filing in this case.


Dated:  July 23, 2020                                     /s/ Craig M. Oberweger
                                                          Craig M. Oberweger (FBN 075076)